JS 44 (Rev. 12/07)(cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

AMY OSBORN and MICHAEL OSBORN

## DEFENDANTS

SEE ATTACHED LIST

**(b)** County of Residence of First Listed Plaintiff  Cobb, Georgia
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Morris, New Jersey
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Lawrence J. Gornick, Debra DeCarli
Levin Simes Kaiser & Gornick LLP
44 Montgomery Street, Suite 3600
San Francisco CA  94104

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1  U.S. Government Plaintiff
- [ ] 3  Federal Question (U.S. Government Not a Party)
- [ ] 2  U.S. Government Defendant
- [X] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [X] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | **PERSONAL INJURY** | **PERSONAL INJURY** | | | |
| [ ] 110 Insurance | [ ] 310 Airplane | [ ] 362 Personal Injury— | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 315 Airplane Product | Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal | [ ] 410 Antitrust |
| [ ] 130 Miller Act | Liability | [ ] 365 Personal Injury — | [ ] 625 Drug Related Seizure | 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & | Product Liability | of Property 21 USC 881 | | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment | Slander | [ ] 368 Asbestos Personal | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| & Enforcement of Judgment | [ ] 330 Federal Employers' | Injury Product | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | Liability | Liability | [ ] 650 Airline Regs. | [ ] 830 Patent | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 660 Occupational | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| Student Loans | [ ] 345 Marine Product | [ ] 370 Other Fraud | Safety/Health | | [ ] 490 Cable/Sat TV |
| (Excl. Veterans) | Liability | [ ] 371 Truth in Lending | [ ] 690 Other | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | **LABOR** | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ |
| of Veteran's Benefits | [ ] 355 Motor Vehicle | Property Damage | [ ] 710 Fair Labor Standards | [ ] 862 Black Lung (923) | Exchange |
| [ ] 160 Stockholders' Suits | Product Liability | [ ] 385 Property Damage | Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 875 Customer Challenge |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 864 SSID Title XVI | 12 USC 3410 |
| [ ] 195 Contract Product Liability | | | [ ] 730 Labor/Mgmt.Reporting | [ ] 865 RSI (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | **PRISONER** | & Disclosure Act | | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PETITIONS** | [ ] 740 Railway Labor Act | **FEDERAL TAX SUITS** | [ ] 892 Economic Stabilization Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | [ ] 790 Other Labor Litigation | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | [ ] 791 Empl. Ret. Inc. | [ ] 870 Taxes (U.S. Plaintiff | [ ] 894 Energy Allocation Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | **Habeas Corpus:** | Security Act | or Defendant) | [ ] 895 Freedom of Information |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party | Act |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | [ ] 900Appeal of Fee |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | Determination |
| | Employment | [ ] 550 Civil Rights | [ ] 463 Habeas Corpus – | | Under Equal Access |
| | [ ] 446 Amer. w/Disabilities – | [ ] 555 Prison Condition | Alien Detainee | | to Justice |
| | Other | | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| | [ ] 440 Other Civil Rights | | Actions | | State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from another district (specify)
- [ ] 6  Multidistrict Litigation
- [ ] 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1332

Brief description of cause:
Product Liability

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".   MDL 1909 (pending)

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

- [X] SAN FRANCISCO/OAKLAND
- [ ] SAN JOSE

DATE  3/7/2008

SIGNATURE OF ATTORNEY OF RECORD  Debra DeCarli

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

*OSBORN et al. v BAYER HEALTHCARE PHARMACEUTICALS CORP, et al.*

### <u>ATTACHED DEFENDANT LIST FOR CIVIL COVER SHEET</u>

BAYER HEALTHCARE PHARMACEUTICALS, INC.

BAYER HEALTHCARE LLC

GENERAL ELECTRIC COMPANY

GE HEALTHCARE, INC.

COVIDIEN, INC.

MALLINCKRODT, INC.

BRACCO DIAGNOSTICS, INC.



Lawrence J. Gornick (SBN 136290)
Debra DeCarli (SBN 237642)
**LEVIN SIMES KAISER & GORNICK LLP**
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone: (415) 646-7160        **E-filing**
Fax: (415) 981-1270
lgornick@lskg-law.com
ddecarli@lskg-law.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

AMY OSBORN and MICHAEL OSBORN,

Plaintiffs,

vs.

BAYER HEALTHCARE
PHARMACEUTICALS, INC.; BAYER
HEALTHCARE LLC; GENERAL ELECTRIC
COMPANY; GE HEALTHCARE, INC.;
COVIDIEN, INC.; MALLINCKRODT, INC.;
and BRACCO DIAGNOSTICS, INC.

Defendants.

Case No:

*EDL*

ORIGINAL COMPLAINT

DEMAND FOR JURY TRIAL

Plaintiffs, Amy Osborn and Michael Osborn, (hereinafter "Plaintiffs") allege as follows:

## NATURE OF THE CASE

1.      Plaintiff Amy Osborn ("Mrs. Osborn" or "Plaintiff") has nephrogenic systemic fibrosis

("NSF"). NSF is an incurable, painful, and deadly disease. Mrs. Osborn contracted NSF as a result of

receiving intravenous injections of gadolinium-based contrast agents manufactured by the Defendants.

Gadolinium-based contrast agents are not safe for use in individuals such as Plaintiff who have

impaired kidney function. Defendants represented that the gadolinium-based contrast agents were safe

and failed to warn of the risks associated with gadolinium-based contrast agents.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 28 USC § 1332. Plaintiffs are citizens of a state

that is different from the states where Defendants are incorporated and have their respective principal

1  places of business. The amount in controversy for this case exceeds $75,000. Venue pursuant to

2  28 USC § 1391(c) is proper because Defendants have sufficient contacts within the City and County of

3  San Francisco, California to subject each of them to personal jurisdiction.

4  ## INTRADISTRICT ASSIGNMENT

5      3.    On information and belief, a substantial part of the events or omissions which give rise

6  to the claim occurred in the County and City of San Francisco.

7  ## PARTIES

8  *Plaintiffs*

9      4.    Amy Osborn and her husband Michael Osborn are residents of the State of Georgia.

10  *Defendants*

11      5.    Defendants Bayer HealthCare Pharmaceuticals, Inc. and Bayer Healthcare LLC (jointly

12  referred to as "Bayer") manufacture, market, and sell Magnevist, a gadolinium-based contrast agent

13  that, on information and belief, was injected into Plaintiff.

14      6.    Defendant Bayer HealthCare LLC is a Delaware business entity with its principal place

15  of business in New York.

16      7.    Defendant Bayer HealthCare Pharmaceuticals, Inc. is a Delaware business entity with

17  its principal place of business in New Jersey. Defendant Bayer HealthCare Pharmaceuticals, Inc. is

18  the U.S.-based pharmaceuticals unit of Bayer Healthcare LLC.

19      8.    At all times relevant to this complaint, Bayer was in the business of designing,

20  licensing, manufacturing, distributing, selling, marketing, promoting, and introducing Magnevist into

21  interstate commerce.

22      9.    Defendants General Electric Company and GE Healthcare, Inc. (jointly referred to as

23  "GE") manufacture, market, and sell Omniscan, a gadolinium-based contrast agent that, on

24  information and belief, was injected into Plaintiff.

25      10.    Defendant General Electric Company is a New York business entity with its principal

26  place of business in Connecticut.

27      11.    Defendant GE Healthcare, Inc. is a Delaware corporation with its principal place of

28  business in New Jersey.

1    12.    At all times relevant to this complaint, GE was in the business of designing, licensing,

2    manufacturing, distributing, selling, marketing, promoting, and introducing Omniscan into interstate

3    commerce.

4    13.    Defendants Covidien Inc. and Mallinckrodt, Inc. (collectively referred to as

5    "Covidien") manufacture, market, and sell OptiMARK, a gadolinium-based contrast agent that, on

6    information and belief, was injected into Plaintiff.

7    14.    Defendant Covidien, Inc. is a Delaware corporation with its principal place of business

8    in New Hampshire.

9    15.    Defendant Mallinckrodt, Inc. is a Delaware corporation with its principal place of

10    business in Missouri. Mallinckrodt is a business unit of Covidien, Inc.

11    16.    At all times relevant to this complaint, Covidien was in the business of designing,

12    licensing, manufacturing, distributing, selling, marketing, promoting, and introducing OptiMARK into

13    interstate commerce.

14    17.    Defendant Bracco Diagnostics, Inc. ("Bracco") manufactures, markets, and sells

15    MultiHance and ProHance, gadolinium-based contrast agents that, on information and belief, were

16    injected into Plaintiff.

17    18.    Bracco Diagnostics, Inc. is a Delaware corporation with its principal place of business

18    in New Jersey.

19    19.    At all times relevant to this complaint, Bracco was in the business of designing,

20    licensing, manufacturing, distributing, selling, marketing, promoting, and introducing MultiHance and

21    ProHance into interstate commerce.

22    20.    The Bayer, GE, Covidien, and Bracco Defendants are collectively referred to as

23    Defendants.

24    **FACTS**

25    21.    Mrs. Osborn was diagnosed with NSF in or around April of 2006.

26    22.    NSF is predominantly characterized by discoloration, thickening, tightening, and

27    swelling of the skin after receiving a gadolinium-based contrast agent injection. These fibrotic and

28    edematous changes produce muscular weakness and inhibit flexion and extension of joints, resulting in

- 3 -

1    contractures. NSF often progresses to painful inhibition of the ability to use the arms, legs, hands,

2    feet, and other joints. The skin changes that begin as darkened patches or plaques progress to a

3    "woody" texture and are accompanied by burning, itching, or severe pain in the areas of involvement.

4    NSF also progresses to a fibrotic or scarring condition of other body organs such as the lungs, heart,

5    liver, and musculature, and that can inhibit their ability to function properly and may lead to death.

6    NSF is a progressive disease for which there is no known cure.

7        23.    NSF is a man-made disease. It only occurs in patients who have received a gadolinium-

8    based contrast agent.

9        24.    Gadolinium is a highly toxic heavy metal. It does not occur naturally in the human

10   body. The only known route for gadolinium to enter the human body is injection of a gadolinium-

11   based contrast agent.

12       25.    Because gadolinium is toxic, it has to be coated to keep it from coming in contact with

13   human tissue when injected. This coating process is called chelation.

14       26.    Gadolinium is eliminated from the body by the kidneys. Gadolinium-based contrast

15   agents are not safe if the chelate separates from the gadolinium, which is what happens over time if

16   kidneys are not functioning properly. Individuals with impaired kidney function risk dechelation, and

17   cannot efficiently or quickly eliminate gadolinium from their bodies. Defendants never tested the

18   safety of their gadolinium-based contrast agents in individuals with kidney impairment.

19       27.    On information and belief, the gadolinium-based contrast agents injected into Plaintiff

20   were manufactured by Defendants.

21       28.    In pre-clinical studies during which gadolinium-based contrast agents were injected into

22   laboratory animals, consistent patterns of toxicity including nephrogenic fibrotic changes in the

23   kidneys and other body organs occurred.

24       29.    During the years that Defendants have manufactured, marketed, distributed, sold, and

25   administered gadolinium-based contrast agents, there have been numerous case reports, studies,

26   assessments, papers, and other clinical data that have described and/or demonstrated NSF in

27   connection with the use of gadolinium-based contrast agents.

28       30.    Plaintiff received MRIs and/or MRAs utilizing gadolinium-based contrast agents.

31. Plaintiff had impaired kidney function at the time she received her first injection of gadolinium-based contrast agent and continued to have impaired kidney function at the time she received each subsequent injection of gadolinium-based contrast agent.

32. During the time period when Plaintiff received injections of Defendants' gadolinium-based contrast agents, Defendants knew or should have known that the use of gadolinium-based contrast agents created a risk of serious bodily injury and death in patients with impaired kidney function.

33. Defendants failed to warn Plaintiff and her healthcare providers about the serious health risks associated with gadolinium-based contrast agents, and failed to disclose the fact that there were safer alternatives.

34. As a direct and proximate result of receiving injections of gadolinium-based contrast agents manufactured, marketed, distributed, and sold by Defendants, Plaintiff developed NSF.

35. Defendants have repeatedly and consistently failed to advise consumers and/or their healthcare providers of the causal relationship between gadolinium-based contrast agents and NSF in patients with kidney impairment. Defendants knew or should have known of the risk of NSF posed by gadolinium-based contrast agents to individuals with impaired kidney function years before they finally issued warnings.

36. It was not until September 2007 that Bayer, GE, Bracco, and Mallinckrodt finally sent letters to healthcare providers warning them of the risk of NSF to kidney impaired individuals who received MRIs using gadolinium-based contrast agents.

37. Had Plaintiff and/or her healthcare providers been warned about the risks associated with gadolinium-based contrast agents, she would not have been administered gadolinium-based contrast agents and would not have been afflicted with NSF.

38. As a direct and proximate result of Plaintiff being administered gadolinium-based contrast agents, she has suffered severe physical injury and pain and suffering, including, but not limited to, the effects of NSF. Plaintiff's physical injuries and pain and suffering will inevitably worsen over time and will in all likelihood lead to death.

39. As a direct and proximate result of being administered gadolinium-based contrast

1   agents, Plaintiffs suffered and continue to suffer significant mental anguish and emotional distress and
2   will continue to suffer significant mental anguish and emotional distress in the future.

3      40.    As a direct and proximate result of being administered gadolinium-based contrast
4   agents, Plaintiffs have also incurred medical expenses and other economic damages and will continue
5   to incur such expenses in the future.

## DISCOVERY RULE & FRAUDULENT CONCEALMENT

7      41.    The discovery rule should be applied to toll the running of the statute of limitations
8   until Plaintiffs knew or through the exercise of reasonable care and diligence should have known of
9   the existence of their claims against all Defendants. The nature of Plaintiffs' injuries and damages,
10   and their relationship to gadolinium-based contrast agents used in conjunction with MRIs and MRAs,
11   was not discovered, and through reasonable care and due diligence could not have been discovered, by
12   Plaintiffs, until a time less than two years before the filing of this Complaint. Therefore, under
13   appropriate application of the discovery rule, Plaintiffs' suit was filed well within the applicable
14   statutory limitations period.

15      42.    Defendants are estopped from asserting a statute of limitations defense because all
16   Defendants fraudulently concealed from Plaintiffs the nature of Plaintiffs' injury and the connection
17   between the injury and all Defendants' tortious conduct.

## FIRST CAUSE OF ACTION

## STRICT LIABILITY: FAILURE TO WARN

20      43.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

21      44.    Defendants' gadolinium-based contrast agents, and MRI and MRA machines designed
22   to be used in conjunction with gadolinium-based contrast agents, were defective due to inadequate
23   warnings or instruction for use, both prior to marketing and post-marketing. Defendants knew or
24   should have known that their products created significant risks of serious bodily harm and death to
25   consumers. Defendants failed to adequately warn consumers and their healthcare providers of such
26   risks.

27      45.    Because of Defendants' failure to provide adequate warnings with their products,

28

1   Plaintiff was injected with gadolinium-based contrast agents that the Defendants manufactured,

2   designed, sold, supplied, marketed or otherwise introduced into the stream of commerce. Those

3   gadolinium-based contrast agents are the legal cause of Plaintiff's physical injuries, harm, damages,

4   and economic loss. Plaintiffs will continue to suffer such harm, damages, and economic loss in the

5   future.

6                              **SECOND CAUSE OF ACTION**

7                       **STRICT LIABILITY:  DESIGN DEFECT**

8       46.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

9       47.    Defendants are the manufacturers, designers, distributors, sellers, or suppliers of

10  gadolinium-based contrast agents, and MRI and MRA machines designed to be used in conjunction

11  with gadolinium-based contrast agents.

12      48.    The gadolinium-based contrast agents manufactured and supplied by Defendants were

13  defective in design or formulation in that, when they left the hands of the Defendants, the foreseeable

14  risks of the products exceeded the benefits associated with their design or formulation, or were more

15  dangerous than an ordinary consumer would expect.

16      49.    The foreseeable risks associated with the design or formulation of gadolinium-based

17  contrast agents, and MRI and MRA machines designed to be used in conjunction with gadolinium-

18  based contrast agents, include, but are not limited to, the fact that the design or formulation of

19  gadolinium-based contrast agents are more dangerous than a reasonably prudent consumer would

20  expect when used in an intended or reasonably foreseeable manner.

21      50.    As a direct and proximate result of Plaintiff being administered gadolinium-based

22  contrast agents as manufactured, designed, sold, supplied, marketed, and introduced into the stream of

23  commerce by Defendants, Plaintiff has suffered physical injury, harm, damages, and economic loss

24  and will continue to suffer such harm, damages, and economic loss in the future.

25                              **THIRD CAUSE OF ACTION**

26                  **STRICT LIABILITY: FAILURE TO ADEQUATELY TEST**

27      51.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

28      52.    Defendants advised consumers and the medical community that gadolinium-based

1 contrast agents were safe for use. Defendants failed to adequately test gadolinium-based contrast

2 agents with respect to their use by consumers with kidney impairment.

3     53.    Had Defendants adequately tested the safety of gadolinium-based contrast agents for

4 use by consumers with kidney impairment and disclosed those results to the medical community or the

5 public, Plaintiff would not have been administered gadolinium-based contrast agents.

6     54.    As a direct and proximate result of Defendants' failure to adequately test the safety of

7 gadolinium-based contrast agents and as a direct and proximate result of Plaintiff being administered

8 gadolinium-based contrast agents as manufactured, designed, sold, supplied, marketed, and introduced

9 into the stream of commerce by Defendants, Plaintiff has suffered physical injury, harm, damages, and

10 economic loss and will continue to suffer such harm, damages, and economic loss in the future.

## FOURTH CAUSE OF ACTION

## NEGLIGENCE

13     55.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

14     56.    Defendants had a duty to exercise reasonable care in the design, formulation, testing,

15 manufacture, labeling, marketing, sale and/or distribution of gadolinium-based contrast agents and the

16 MRI and MRA machines designed to be used in conjunction with gadolinium-based contrast agents.

17 In particular, they had a duty to assure that their products did not pose an unreasonable risk of bodily

18 harm and adverse events.

19     57.    Defendants failed to exercise reasonable care in the design, formulation, manufacture,

20 sale, testing, marketing, or distribution of gadolinium-based contrast agents and the MRI and MRA

21 machines designed to be used in conjunction with gadolinium-based contrast agents in that they knew

22 or should have known that the products could cause significant bodily harm or death and were not safe

23 for use by certain types of consumers.

24     58.    Defendants failed to exercise ordinary care in the labeling of gadolinium-based contrast

25 agents and the labeling of MRI and MRA machines designed to be used in conjunction with

26 gadolinium-based contrast agents and failed to issue to consumers and their health care providers

27 adequate warnings concerning the risks of serious bodily injury or death due to the use of gadolinium-

28 based contrast agents and the MRI and MRA machines designed to be used in conjunction with

1  gadolinium-based contrast agents.

2          59.    Despite the fact that Defendants knew or should have known that gadolinium-based

3  contrast agents and the MRI and MRA machines designed to be used in conjunction with gadolinium-

4  based contrast agents posed a serious risk of bodily harm to consumers, Defendants unreasonably

5  continued to manufacture and market gadolinium-based contrast agents and the MRI and MRA

6  machines designed to be used in conjunction with gadolinium-based contrast agents for administration

7  to MRI and MRA patients with kidney impairment and failed to exercise reasonable care with respect

8  to post-sale warnings and instructions for safe use.

9          60.    At all relevant times, it was foreseeable to Defendants that consumers like Plaintiff

10  would suffer injury as a result of their failure to exercise ordinary care as described above.

11         61.    As a direct and proximate result of Defendants' negligence, Plaintiff has suffered

12  physical injuries, harm, damages, and economic loss and will continue to suffer such harm, damages

13  and economic loss in the future.

14         62.    The foregoing acts, conduct and omissions of Defendants were vile, base, willful,

15  malicious, wanton, oppressive, and fraudulent, and were done with a conscious disregard for the

16  health, safety, and rights of Plaintiffs and other users of Defendants' products, and for the primary

17  purpose of increasing Defendants' profits. As such, Plaintiffs are entitled to exemplary damages.

18                                  **FIFTH CAUSE OF ACTION**

19                            **NEGLIGENT MISREPRESENTATION**

20         63.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

21         64.    Defendants supplied the public and Plaintiff's healthcare providers with materially false

22  and incomplete information with respect to the safety of their gadolinium-based contrast agents.

23         65.    The false information supplied by Defendants was that gadolinium-based contrast

24  agents were safe.

25         66.    In supplying this false information, Defendants failed to exercise reasonable care.

26         67.    The false information communicated by Defendants to Plaintiff and her healthcare

27  providers was material and Plaintiff justifiably relied in good faith on the information to her detriment.

28         68.    As a direct and proximate result of Defendants' misrepresentations, Plaintiff was

1  administered gadolinium-based contrast agents and has suffered physical injury, harm, damages, and

2  economic loss and will continue to suffer such harm, damages, and economic loss in the future.

3                                    **SIXTH CAUSE OF ACTION**

4                                              **FRAUD**

5          69.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

6          70.    Defendants knowingly and intentionally made materially false and misleading

7  representations to Plaintiff's healthcare providers and to the public, to the effect that gadolinium-based

8  contrast agents were safe for use and that their labeling, marketing, and promotional materials fully

9  described all known risks associated with their product.

10         71.    Defendants' representations were in fact false. Gadolinium-based contrast agents are

11 not safe for use and Defendants' labeling, marketing, and promotional materials did not fully describe

12 all known risks of the products.

13         72.    Defendants had actual knowledge that gadolinium-based contrast agents created an

14 unreasonable risk of serious bodily injury and death to consumers, especially patients with kidney

15 impairment.

16         73.    Defendants knowingly and intentionally omitted this information from their labeling,

17 marketing, and promotional materials and instead, labeled, promoted, and marketed their products as

18 safe for use in order to increase and sustain sales.

19         74.    When Defendants made representations that gadolinium-based contrast agents were

20 safe for use, they knowingly and intentionally concealed and withheld from Plaintiff, her healthcare

21 providers, and the public, the fact that their gadolinium-based contrast agents are not safe for use in

22 consumers with kidney impairment.

23         75.    Defendants had a duty to disclose that gadolinium-based contrast agents are not safe for

24 use in patients with kidney impairment. Defendants had superior knowledge of these facts that were

25 material to Plaintiff and her healthcare providers' decisions to use gadolinium-based contrast agents.

26         76.    Plaintiff and her healthcare providers reasonably and justifiably relied on the

27 Defendants' representations that gadolinium-based contrast agents were safe for human use and that

28 Defendants' labeling, marketing, and promotional materials fully described all known risks associated

- 10 -
COMPLAINT FOR DAMAGES AND JURY DEMAND

1    with the products.

2    77.    Plaintiff did not know and could not have learned of the facts that the Defendants

3    omitted and suppressed. The facts suppressed and concealed by the Defendants are material. Had

4    Plaintiff and her healthcare providers known that gadolinium-based contrast agents are not safe for use

5    in patients with renal insufficiency, Plaintiff would not have been injected with gadolinium-based

6    contrast agents.

7    78.    As a direct and proximate result of Defendants' misrepresentations and concealment,

8    Plaintiff was administered gadolinium-based contrast agents and has suffered physical injury, harm,

9    damages and economic loss and will continue to suffer such harm, damages, and economic loss in the

10   future.

11   79.    The foregoing acts, conduct, and omissions of Defendants were vile, base, willful,

12   malicious, wanton, oppressive, and fraudulent, and were done with a conscious disregard for the

13   health, safety, and rights of Plaintiff and other users of Defendants' products, and for the primary

14   purpose of increasing Defendants' profits. As such Plaintiffs are entitled to exemplary damages.

15                                    **SEVENTH CAUSE OF ACTION**

16                           **FRAUD: CONCEALMENT, SUPPRESSION OR**

17                                **OMISSION OF MATERIAL FACTS**

18   80.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

19   81.    Defendants omitted, suppressed, or concealed material facts concerning the dangers and

20   risk associated with the use of their gadolinium-based contrast agents, including but not limited to the

21   risks to patients with kidney impairment of developing NSF, and the fact that safer alternatives were

22   available. Further, Defendants purposely downplayed and understated the serious nature of the risks

23   associated with use of their gadolinium-based contrast agents in order to increase and sustain sales.

24   82.    As a direct and proximate result of Defendants' concealment of material facts, Plaintiff

25   was administered gadolinium-based contrast agents and has suffered physical injury, harm, damages,

26   and economic loss and will continue to suffer such harm, damages, and economic loss in the future.

27   83.    The foregoing acts, conduct, and omissions of Defendants were vile, base, willful,

28   malicious, wanton, oppressive, and fraudulent, and were done with a conscious disregard for the

1    health, safety, and rights of Plaintiff and other users of Defendants' products, and for the primary

2    purpose of increasing Defendants' profits. As such Plaintiffs are entitled to exemplary damages.

3                                    **EIGHTH CAUSE OF ACTION**

4                                **BREACH OF EXPRESS WARRANTY**

5         84.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

6         85.    Defendants expressly warranted that gadolinium-based contrast agents were safe and

7    effective.

8         86.    The gadolinium-based contrast agents manufactured and sold by Defendants did not

9    conform to these express representations because they cause serious injury to consumers when

10   administered in recommended dosages.

11        87.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff has

12   suffered physical injury, harm, damages, and economic loss and will continue to suffer such harm,

13   damages, and economic loss in the future.

14                                   **NINTH CAUSE OF ACTION**

15                               **BREACH OF IMPLIED WARRANTY**

16        88.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

17        89.    At the time Defendants designed, manufactured, marketed, sold, and distributed

18   gadolinium-based contrast agents, Defendants knew of the use for which gadolinium-based contrast

19   agents was intended and impliedly warranted the product to be of merchantable quality and safe for

20   such use.

21        90.    Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether

22   gadolinium-based contrast agents were of merchantable quality and safe for their intended use and

23   upon Defendants' implied warranty as to such matters.

24        91.    Contrary to such implied warranty, gadolinium-based contrast agents were not of

25   merchantable quality or safe for their intended use because the product was unreasonably dangerous as

26   described above.

27        92.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff has

28   suffered physical injury, harm, damages, and economic loss and will continue to suffer such harm,

1  damages, and economic loss in the future.

2  ## TENTH CAUSE OF ACTION

3  ## VIOLATION OF GEORGIA CONSUMER PROTECTION STATUTES

4  93.  Plaintiffs incorporate by reference and reallege each paragraph set forth above.

5  94.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices

6  in violation of Ga. Code Ann. §§ 10-1-372 and 10-1-420 including but not limited to the following:

7  a.  Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance, or

8  ProHance for use with MRAs and other off-label uses by impliedly representing that such products are

9  approved for use with MRAs and other off-label uses, when in fact there is no such approval;

10  b.  Representing that gadolinium-based contrast agents are safe and effective for all

11  patients, including patients with kidney impairment, when in fact they are not;

12  c.  Representing that MRIs and MRAs using gadolinium-based contrast agents are safer or

13  more effective than other imaging methods that do not require the use of gadolinium-based contrast

14  agents when in fact they are not;

15  d.  Marketing, promoting, or selling their products as safer or superior to other brands of

16  gadolinium-based contrast agents;

17  e.  Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance, or

18  ProHance as inert or with words to that effect;

19  f.  Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance, or

20  ProHance for use with MRAs or other off-label uses by expressly or impliedly representing that they

21  are safe for such use; and

22  g.  Remaining silent despite their knowledge of the growing body of evidence regarding

23  the danger of NSF and doing so because the prospect of huge profits outweighed health and safety

24  issues.

25  95.  As a direct and proximate result of Defendants' unfair methods of competition and

26  unfair or deceptive actions or practices, Plaintiff was administered gadolinium-based contrast agents

27  and has suffered serious physician injury, harm, damages, and economic loss and will continue to

28  suffer such harm, damages, and economic loss in the future.

1

## ELEVENTH CAUSE OF ACTION

2

## LOSS OF CONSORTIUM

3      96.    Plaintiff Michael Osborn ("Mr. Osborn") incorporates by reference and realleges each

4    paragraph set forth above.

5      97.    Michael Osborn is the husband of Amy Osborn.

6      98.    As a direct and proximate result of Defendants conducts, Mr. Osborn has been deprived

7    of his wife's love, society, companionship, and services and has otherwise suffered loss, the extent of

8    which will be more fully adduced at the trial of this matter.

9      WHEREFORE, Plaintiffs pray for relief as follows:

10      1. Compensatory damages in excess of the jurisdictional amount, including, but not limited to

11          pain, suffering, emotional distress, loss of enjoyment of life, loss of consortium, and other

12          non-economic damages in an amount to be determined at trial of this action;

13      2. Past and future medical expenses, income, and other economic damages in an amount to be

14          determined at trial of this action;

15      3. Punitive damages in an amount to be determined at trial of this action;

16      4. Pre- and post-judgment interest;

17      5. Attorneys' fees, expenses, and costs; and

18      6. Such further relief as this Court deems necessary, just, and proper.

19

## DEMAND FOR JURY TRIAL

20      Plaintiffs hereby demand a trial by jury.

21      Respectfully submitted this 7th day of March, 2008.

22                                              LEVIN SIMES KAISER & GORNICK LLP

23
                                          By: _____
24                                              Debra DeCarli, Esq.

25

26

27

28

- 14 -
COMPLAINT FOR DAMAGES AND JURY DEMAND